Good morning, and may it please the Court, we have issue now with the petitioner Mr. Khosrow Dalalat. I would like to reserve five minutes from the moment. This case is about Mr. Dalalat's right to appeal to the Board under 5 CFR section 353.304, the denial of his restoration rights following his recovery from an on-the-job injury. In writ to deciding this jurisdictional issue, the Board also held that Mr. Dalalat lacked restoration rights altogether. However, let me ask you at the outset, just to understand what the parameters of the claim are, suppose we should agree with you that the Board had jurisdiction, and suppose we should also agree that by virtue of that Mr. Dalalat was an employee for purposes of Board review and for purposes of the rights conferred by the restoration statute. What does he get out of that if the agency is free to say at any point, presumably for some reason other than that he was injured, that they don't need his services anymore? That's precisely the point from Judge Bryson that they couldn't have removed him for an unlawful purpose. Is there any suggestion here that they did remove him for an unlawful purpose as opposed to their general right, which I understand is that under re-employed annuitants, they can remove you for simply because they don't need you anymore or they decide they'd really rather have somebody else or somebody who's working as a regular employee? Well, the remedy at the minimum here would be for the two months that they failed to respond altogether to his requests for restoration. And then moving forward beyond that, if his removal was due to his injury, and there are some allegations that these facts weren't decided below, but that's part of a different claim. That's not the claim that's in front of us. We don't have to decide, nor would the MSPB have, in this case, decide whether or not he was removed for an improper purpose. That's not part of what's in front of us, correct? Well, the remedy could extend beyond his removal if that removal was also part of his- That's not part of this claim that's in front of us for this court to decide. This court is right now just deciding whether the board has jurisdiction over re-employed annuitants due to this denial of restoration. And this court has previously held that a removal that can amount to a denial of restoration rights as well. Mr. Delalat initially attempted here to appeal the agency's actions based on two grounds, both adverse action section 7701 and the denial of restoration rights. Because he belatedly added the denial of restoration rights claim, the board in his first appeal failed to address that issue and told him he should appeal that separately, which he did. So any of the actions of the board that didn't amount to a denial of restoration rights could be appealed as part of this appeal. I appreciate that there were two separate claims, one for the adverse action that was proceeding separately from this, and that would go to the heart of whether he was improperly removed. And then the second one was whether or not he is, the re-employed annuitant is entitled to restoration rights, which seems to me separate and apart from whether or not they're entitled to fire him for whatever reason that they may have done so. Well, the removal here could also be a denial of restoration rights. The first appeal was an appeal of his removal based solely on the adverse action jurisdiction around him. And what's the status of that case? And that case was dismissed for lack of jurisdiction. And he had tried before it was dismissed to add the jurisdictional ground that the agency's actions amounted to a denial of his restoration rights. But the agency refused to address that ground because it was added after his initial complaint was filed. And the dismissal of the first action, does that appeal to us? That does not appeal to this court. So why should we now consider as part of this appeal something that was litigated in a separate claim and not properly appealed? Well, all that was litigated in the first claim was whether he had, the agency had jurisdiction to hear and appeal his removal based on Section 77. And that was clearly, and that was dismissed. And so we, that's, for example, why we have an appeal here that he may have had, that he may have actually not been a re-employed New England, because that was an issue that was litigated in the first claim. But whether all of the agency's actions amounted to a denial of restoration and the remedy due to that, which according to, for example, Smith v. Army may extend beyond his removal, are part of this claim. So anything that he can prove on remand would amount, was in denial of restoration rights, would be part of this appeal. But would he be limited to argue that he was denied his restoration rights on remand? That would be the limit of the scope of the remand. Yes, Your Honor. But as in the Roche case, when someone is removed from their position, that can also amount to a denial of his restoration rights. For example, if he was, in that case, the employee was restored to a position that presumably accommodated partial recovery from an injury, but didn't actually accommodate that, and so he was then removed. But from a practical standpoint, what impact does a restoration right have to a re-employed New England who is essentially an employee at will? So he could be restored to his position, and the next day he could be terminated. Could be. What is the substance and value of the restoration right at that point? This is one of the three errors that the Board made, was basically implying that at-will employment is an absolute right, and this is an error that the agency also makes here. At-will employment is limited by exceptions to the public policy and other statutes. For example, here there are statutes prohibiting various personnel practices, discrimination, whistleblowing, which the Board has found that re-employed New Englanders have the right to protection from. This is another such example where restoration from a permanent injury is a right that re-employed New Englanders have because to effectuate the purposes of the Compensation Act, which is to provide them, to put them back into the position that they would have been absent their injury. So is the essence of your argument then that in the FECA, the employee is restored and he has all of the rights under those particular restorations because of his injury, so he could not be terminated because he was injured on the job? He could not be, precisely, or he couldn't be terminated because he was injured on the job. He could be terminated for other reasons, and he could also be terminated due to, for example, a RIF, an employee that's out on leave without pay can always be terminated due to a RIF or due to some other purpose. But you said he could be terminated for other reasons. I guess I don't understand that to be the definition of outlaw employee. I understood it to be, it doesn't have to be a reason. You can be terminated for any reason but for a few very carefully carved out exceptions due to discrimination or harassment type of really inappropriate behavior that we want to discourage in all instances. And so am I wrong? Is an outlaw employee, can he only be terminated for a reason as you stated a minute ago? Well, if the employee comes forward with a purpose that's prohibited, here we argue that Mr. Dallas's position is that terminating an employee due to an injury that he suffered on the job is a prohibited reason. What is the state of the record? We don't have the full record here, of course. But what is the state of the record with respect to his assertion that he was fired because of his injury? Your Honor, actually all that has been decided below is that the board decided that this wasn't untimely because if he had restoration rights then he needed to get notice. And secondly, that he may not have had, the board may not have had jurisdiction at all. But in the board's second, first revamp decision to the A.J., the A.J. was required to give Mr. Dellawade notice as to how he could make his non-frivolous allegations. So it was still actually unclear to the board whether this was even a partial recovery or a full recovery and what particular actions he was alleging were those actions that resulted in the failure to restore. Okay, and did he then produce seven allegations with respect to the reasons for his firing? The A.J. never gave him that opportunity. Firing is quite correct, I guess. The A.J. never gave him that opportunity because on remand from the board, she dismissed the case for lack of jurisdiction. Oh, I see, so there was never such a filing. Right. So the A.J. never, has never given him the notice as to what he needs to prove to make non-frivolous allegations. All she did on remand was to dismiss the case without a hearing for lack of jurisdiction because he's a green-cloaker. Is there, to your knowledge, any evidence that as to the reason for the agency's deciding not to continue this at will? There is some other evidence in the record, Your Honor, that the agency put in his employment file into the record, and there you can see that it appears that they, their argument below is that they never received any request for restoration from him and that they sent him, and in the end, they ended up sending him a letter saying, we think that you've recovered, but we haven't heard from you in a while, so we're removing you. So it's unclear why, so it appears that it was due to his injury. He'd asked for restoration, and they apparently didn't route these letters to the correct location, and so then he, they just removed him because they hadn't heard from him. Well, they never answered his request for restoration. Right. So they never responded, and, but the board has made the factual finding that they did receive them based on his post office receipts. I see that I'm into my rebuttal time, if I may. Very well. We'll reserve your rebuttal time. Thank you, Your Honor. Let's hear from the Governor. May it please the Court. The Air Force took one action in this case, and that was to terminate Mr. Delawade. Now, Mr. Delawade attempts to recharacterize his termination as a failure of restoration. Why did they terminate him? That's not clear from the record, and, of course, the Air Force didn't need to state a reason. Now, is it proper, though, if they terminated him because he was injured? No, not. Because he did not have restoration rights. Wait, but no, apart from restoration rights, is it proper to terminate an employee because they get injured? An employee, well, yes, it is. Suppose he was still receiving OWCP payments. Then I think it would still be the same. There is no restriction on the government's ability to terminate people. Now, the board has held the contrary, if I understand it correctly. The OWCP case, are you familiar with that? Yes, Your Honor. Now, isn't that contrary to the proposition that the pre-employed annuitant can be fired during the tenure, during the period that he's receiving OWCP payments? If I recall, Ochoa was in the context of a greater employee, is that right? No, Ochoa was somebody who decided to, well, he had been injured long before, and he decided to take OWCP rather than disability retirement. And then when he recovered, he said, right, they terminated him while he was still having, being paid OWCP, as I recall the facts. And the board said we do have jurisdiction under those circumstances. But I don't believe Ochoa was a probationer or a re-employed annuitant, is that right? He was a re-employed annuitant. That's how he was characterized. And in fact, the board has later said, I know they described it as re-employed. We do recognize an exception in cases where the re-employed annuitant is entitled to restoration rights based on compensable injuries. So that seems to be inconsistent. That's the board's position in OVAC. And it seems inconsistent with the argument that there's no jurisdiction whatsoever, and they can terminate him even for injury. I mean, suppose that what we had in this case was they said, you've been injured. We can't use you anymore. You're gone. You say the board can't touch that? That's right, because he simply doesn't have restoration rights. Can you spray that with the board's previous positions, though, in the cases in which the board has said you can't do that? Well, of course, this court isn't bound by any decision to the board. This court's duty is to apply Congress's will. And in this instance- But we might not be bound, excuse me, counsel, but we might not be bound by the board's determination. But they've already indicated at least what they believe is a reinstatement right in those two cases that Judge Bryson pointed to. Both Ochey and Footnote have obeyed, saying, in fact, we have recognized and expressed an exception in cases where the real court in Luton is entitled to restoration rights based upon a compensable injury. So they haven't recognized it in two cases of this. So I guess contrary to congressional intent, contrary to the statute, what is the basis for that recognition? That's what I said. I don't think there is a basis for the recognition of a restoration right in that context. And if there is a reason, the reasoning in Ochoa is unsound, because I don't think the board considered whether or not Mr. Ochoa actually was a reemployed annuitant. If he was collecting OWCP benefits, then he would not have been an annuitant, pursuant to the definition set out in Chapter 82. A reemployed annuitant is eligible for FECA benefits for injuries on the job. So you are eligible as a reemployed annuitant for FECA benefits. Can you terminate that question while he's receiving FECA benefits? You're talking about a reemployed annuitant who is collecting FECA benefits at the time of his termination? Well, I have two responses to that. First, I would say yes, because Congress has said that reemployed annuitants are employees at will. That has a very definite connotation to it. But basically, employees at will have no employment protections, save for protections against discrimination or constitutional violations or whistleblower protections. Well, you can't terminate them while they're injured and receiving benefits, can you? Yes, that's right, you can. Or the government can terminate a reemployed annuitant because he is an at-will employee. That is not part of at-will employment. Now, I believe there's something else I should point out. I'm sorry. Go ahead. Your question, Judge Norris, doesn't quite fit the facts of this case, because Mr. Gelobot was not collecting OWCP benefits at the time he was terminated. And I think that's something worth looking at in a little bit more detail, is the timeline here. Well, here's what strikes me as the difficult aspect of the case, from the perspective of your argument. You're saying on the one hand, well, he's an employee at will, which means that the government can fire him for any reason or no reason. But you qualify that properly, I think, by saying, well, but there are some bad reasons, and the government can't fire him for those. And presumably, the board would have jurisdiction over at least some of those bad reasons to say to the agency, you can't fire him for this reason. This is one, for example. So we know that the at-will doesn't cover everything. There are some bad reasons that, presumably, they can't fire him for. They can't say, all reemployed annuitants who are black are now hereby released. They obviously couldn't do that, even though it's at will. Correct. Then obviously not. Sure. So then the question is, is the right conferred by the CEQA statute, restoration rights, and so forth, one of those bad reasons for firing somebody, i.e. that he was injured on the job? And simply saying no, because he's an at-will employee, doesn't seem to me to answer that very precise question. Because by simply saying, well, the at-will sweeps everything off the table, you're ignoring the fact that there are some things as to which the board does have jurisdiction. And the question comes down to whether this is one of them. And if not, why not? What's special about this that distinguishes it from, say, whistleblowing? To make the point more precisely, suppose on the day that he got injured, the agency had said, you've been injured, we therefore can't use you anymore. You're out of here. Your position, I take it, is he has no right with respect to that situation. That's correct. Why is that different in kind from somebody saying, well, you're a whistleblower, you're out of here? Because there's a very clear public policy and statutory protection for whistleblowers in that context. As there is for injured employees. I don't think that's correct, though, Your Honor. I don't think that there is a statutory penalty Congress indicated an intent to abrogate the at-will employment doctrine in that context. Did Congress specifically speak in the whistleblower statute to at-will employees? I don't remember anything explicit about that. I think it was just a decision that clearly were intended to be a sufficiently broad-based public policy that we're not going to permit you to exclude at-will employees from the protection of that policy, just as we don't from racial discrimination. Why not? It's certainly not important to recognize a public policy exception under these circumstances. And I think there are a couple reasons why it should. First of all, Mr. Gattala did not argue for one below in this instance. He's not presented any authority to step it out and has not presented any authority to suggest that the same sort of public policy rationales that motivate exceptions in other contexts would motivate an exception or exist in this case. Moreover, there are no facts that would support such a public policy exception. Mr. Gattala, in fact, did not allege that his termination was in any way related to the fact that he had a compensable injury. And the fact is, when he was terminated on October 31st of 2003, he did not have a compensable injury. He had not had a compensable injury for close to eight months at that time. He stopped receiving OWCP benefits in February of 2003. So he was not collecting benefits at that point. And he had another surgery on September 29th of 2003, which meant that he was unable to return to work at the time of his termination for reasons apart from a compensable benefit. He had a non-compensable benefit that prevented him from returning to work. What happens in a situation known as a FECA, which defines a term employee with four exceptions? And those exceptions are not applicable to the present situation. So under FECA, he is an employee and has defined a statute, right? Same way as a whistleblower would cover a whistleblower's statute. He is an employee under the FECA definition. He is not, or at least the board hasn't addressed the issue. Well, actually, step back. The board hasn't addressed that issue. And I don't know that all the facts have been holistic on that issue before the court. Secondly, the board certainly didn't consider whether he's an employee under 2105, which is the Title V definition of employee. You would be covered under 8151 in the FECA statute because there are only four exceptions to the FECA statute. So unless you fit within one of the exceptions, you would be within the employee category. Right. The FECA definition uses the term employee, which relates back to 2105, which is the general definition of employees in Title V. And in that context, in 2105, the definition requires that the person be, I believe, engaged in federal activity at that time. And, of course, at the time of Mr. Della's termination, he was not engaged in any sort of federal activity. He had not been at work for close to eight months at that point due to a noncompensable injury. So why does he have to be engaged in federal activities when he is terminated and when he is injured, which would restrict the actions of the agency from terminating him while he is employed? I believe that the assessment of whether or not he is an employee for the purposes of FECA has to occur at the time, during the time period that he's alleging he was entitled to restoration. If he's alleging that he was entitled to restoration from the period between August 4th of 2003 and September 29th of 2003, then he must – if he's attempting to establish jurisdiction on the basis of facts that occurred during that time, then he must have been an employee during that time. If we conclude that the Board does have jurisdiction over this claim, then what do you think we should do with the case? Well, First Your Honor, I don't think the Court can conclude on the facts that are in the record that the Board does have jurisdiction. I think at most the Court can go so far as to say that the Board erred in its reasons for not finding jurisdiction in this case. But as I was just explaining, first of all, the Board did not make a determination as to whether or not Mr. Della Latt is an employee under 2105. The Board did not make a determination as to whether or not Mr. Della Latt is a, quote, injured employee under 353.304. Given that he was not suffering from a pensible injury, which is the definition of an injured employee – It sounds like you're arguing that we should remand the case if we find that the Board's reasons for finding that he was not entitled to any protection under the statute are wrong. That's right, Your Honor. So what I was looking for is, is there an argument that you would have to say that we can affirm anyway, notwithstanding saying that, well, the Board was wrong in saying that there's no jurisdiction, but we can still affirm for some other reason? It doesn't sound like you're making that argument. Well, I think you would need another jurisdictional basis. And I think the argument, as we've laid it out, provides one. That is, first, we're arguing that he wasn't – or, I'm sorry, that the agency did not fail to restore him because the facts underlying his alleged failure to restore are, in effect, a termination. And Congress has said that very clearly that re-employed annuitants may not challenge their terminations. Now, secondly – Because the facts are not very well developed in this case. I'm not sure just what the facts are. Well, you can – either based on Mr. Delalette's allegations, however. If you take Mr. Delalette's allegations at their face value, which is what would be required to do at this point, they simply don't lay out enough to show a failure to restore on the part of the agency. Counsel, you sort of resisted agreeing that a re-employed annuitant could be deemed an employee under the regulation. I know Judge Scayarza was asking questions about the four exceptions. And I guess I was surprised because I thought that your response would have been, regardless of whether he's an employee, he is an at-will employee under the statute. And so an at-will employee has some fundamental difference vis-a-vis whether or not we have to continue employing you. So whether or not he fits the regulatory definition of employee, it is still a qualified employee by virtue of the very statute directed to re-employed annuitants. Is that part of the government's position? Or is your position, no way, no how, not an employee? You don't even think about it? Our position is that he is an employee at will. And I guess – Employee for purpose – I think what Judge Moore is asking, is he an – are you conceding that he's an employee for the purpose of the statute, but that his at-will status limits his rights under the statute? Do you understand the distinction? What I understood Judge Moore's question to be. Well, I think what Judge Moore is asking is whether or not we're conceding that he is, that Mr. Della is an employee under the FECA definition. Right. Am I correct? That's, okay. And we do not concede that. That was not an issue that was considered by the board. And I don't think that there are enough facts in this record to support that conclusion. I don't see the time. What Judge Bryson then pointed out should be remanded to complete the record of the jurisdictional issue and determine whether or not under FECA he does have employee rights and whether or not under FECA he would have reemployment rights. No, Your Honor. Because even if you accept Mr. Della Lott's allegations made below, there is sufficient to make up for the fact that that case hurts. Where are those allegations to be found? There is – Mr. Della Lott responded – well, let me take a step back. After the full board considered the case, it was mandated back to the administrative judge, and with instructions to issue a word to show cause, establish a jurisdiction, Mr. Della Lott responded to that word, show cause. I thought your opposing counsel said that he did not have an opportunity to lay out his factual – his factual prediction for his claim. That's something probably Ms. Watt should address on her part, I suppose. But there is a response to show cause in her record. Can I ask one more question before you disappear? I'm trying to wrap my head around the procedural posture of what were two – apparently viewed as two separate claims here. The first for termination, the second for restoration rights. And I guess I think a lot of the discussion that we've had today seems to blend the two. And I don't know what obligation, if any, we have to focus on one rather than the other. What exactly happened in the termination claim that wasn't appealed and was dismissed for lack of jurisdiction? What were the allegations? And is the government's position that that is completely separate from the restoration claim? Or does the restoration claim, as I think your opposing counsel suggested, sweep in the termination as well? Mr. Delalette's challenge to his termination was dismissed on the grounds that the board didn't have jurisdiction because Mr. Delalette is very clearly not an employee under 508C-7511, which has a specific exclusion for a new attestable definition of employee. So the definition in 7511 is the definition that applies to the Chapter 75 board's jurisdiction for terminations. That's correct. So his appeal was dismissed on that basis. Our argument is very – I mean, this really goes to the core of our argument, which is that there is no separate or distinct action. The Air Force terminated Mr. Delalette. It had the right to do that given that he was an employee at will. And Mr. Delalette raises the Roche case in response to the Roche line of cases. And I would point out a few things with regard to those cases. First of all, they apply to probationary employees, which at least have some small measure of protection under the civil service protections. That's not true for employees at will. Well, they do have a small measure of protection under the civil service laws. They have the protection, for example, of prison. There are a few protections against them than probationers, but they have some. I mean, I think we've established that, right? You can't say they have no rights. That's right. I say it for those public policy exceptions that they have. But your point is made, Your Honor. But what distinguishes admiral employees from probationary employees is that certainly if Congress intended to extend the other minimal protections that probationary employees have to re-employed annuitants, it could have done that. I mean, I think Congress is very clear in using the term at will that it intended to only give the minimal type employment protections to re-employed annuitants in that context. But it doesn't really square with the total at will type of a situation because the normal parlance at will means you can be terminated for any cause whatsoever. You don't even need a reason to terminate. I think that there is some attachment or some protection even under the at will provisions for re-employed annuitants. And I think part of the reason for that is congressional policy that they might want to rehire some annuitants for the particular purposes that may have been needed. So it's not as if they have a total ability to terminate them for any reason whatsoever. There are some causes and some aspects of rights which they attach at that point, isn't there? And it's not just a blanket right to terminate people. Well, the only protections they have are the ones that are provided by the public policy exceptions to the Employment Bill Doctrine. There are no other plain vanilla civil service protections that apply to re-employed annuitants. And one of which is in the FECA. They do have rights in the FECA as re-employed annuitants. They do have the rights if they're injured on the job to be compensated. You're not suggesting to me that somebody who's a re-employed annuitant and who gets his hand caught in the machine and is out isn't entitled to FECA – OWCP payments, right? That's not an issue I'm familiar with. There are certain circumstances for OWCP benefits, but that person can't be terminated. OWCP applies in that situation, don't you think? I mean, that's true. I suspect that's probably the case. Right. So, as Judge Gagasher says, we've already opened the door. We know that that's a public policy that applies to employees, which includes re-employed annuitants. Then the next question is, well, if OWCP payments are out in the country, these people, why not restoration payments? You're distinguishing – well, maybe not conceding the OWCP payment, but it seems to me, if that's not – Well, the Employment of Will Doctrine – I'm sorry. The Employment of Will Doctrine has nothing to say about compensation for injuries. There's not an understanding in Congress's use of the term Employment of Will that would be in purport to deny them benefits under those circumstances. Right. The question is, are they employees within the meaning of the FECA statute? And if they are, it's kind of hard to say whether they're employees for the purposes of injury, but not for the purposes of restoration. If you view their restoration as necessarily a termination – or, I'm sorry, the failure of restoration as a termination, Congress clearly intended to exclude re-employed annuitants from being able to challenge their terminations under those circumstances. Thank you. Thank you. Thank you. I'll first address the – just the factual conclusion. Judge Bryson, you noted that the factual record here is quite incomplete. And the order to show cause that the AJA issued after remand from the Board was solely regarded with respect to why there's jurisdiction, because Mr. Dell is a re-employed annuitant and did not address his – that he had insufficiently – if he had insufficiently made factual allegations. Regarding the agency's position that – that the – the argument that he wasn't suffering from a compensable injury either at the time he asked for restoration or at the time that they actually terminated him, he wasn't receiving OWCP benefits. He was, in fact, unable to work for a period of time due to an unrelated second injury for which he had a scheduled surgery in September. Because I'm wondering, I guess – I want you to explain that, but I'm wondering, is your position that if an employee – a re-employed annuitant has any injury at all for any reason, he has to be restored or is it if he suffers an on-the-job injury he has to be restored? Well, the FECA statutes apply to what the OWCP calls compensable injuries. And so here it's the injury that the OWCP recognized that he suffered as a re-employed annuitant and for which they provided compensation. It's true that after he stopped receiving compensation – So your position is he's entitled to restoration rights if he – because of suffering or when – you're entitled to restoration rights if you suffer from a compensable injury. So you are not arguing to us that restoration rights should extend regardless of the purpose or regardless of the injury he had. Yes, sir. Section 8151 explicitly states that. I just want to make sure. So that's how you deal with this factual situation that the government suggested, which is it isn't that he couldn't return to work because of the compensable injury. That was over and done. It was that he couldn't return to work because of another second scheduled surgery. Your Honor, this is a set of arguments that wasn't raised below and hasn't been factually – Is there a reason to remand the case? Well, certainly the factual basis. If this Court should find that there – that re-employed annuitants do fall under FECA, as the OWCP certainly recognizes and provide – they provide compensation benefits to re-employed annuitants. That's correct. If I'm a re-employed annuitant, then I'm injured on the job. The OWCP pays the fee. Correct. There's never been any decision that we've been able to find by the agency arguing that that's not the case. They seem to want to carve out just Section 8151, which there seems no real reason to try to do. There – Section 2105 – It's the same definition of employee. Right. The OWCP payment and respiration. Right. Correct. The agency brings up Section 2105, which it's true. That provides the definition of employee as applicable to all of Title V, but the definition there is just that an employee is anyone who's appointed in the civil service by various people, including other employees. That was certainly the case here. And the jurisdictional statute, Section 353.304, the regulation, provides that an injured employee or a former employee – So it's not that only an injured – an employee who's been restored can appeal lack of respiration, but a former employee, which is the case here. He was a former employee who was out on leave without pay and sought respiration rights. In addition, re-employed annuitants – I think the agency and the board attempt to cast re-employed annuitants as these employees that have no rights. And it's quite clear that they have various appeal rights, such as for prohibited practices, which are statutory rights. And they're not all constitutional public policy appeal rights. For example, the prohibited practices statute prevents discrimination based on national origin, sexual orientation, all types of discrimination, as well as physical abuse. Would that be appealable to the board, or would that be something you'd have to proceed to Title VII? Well, they would go through – the statute requires that they go to the Office of Special Counsel. Right. And that if they don't get relief there, then they bring an individual right of action against the agency directly to the board. Even for a discrimination claim in a – for a re-employed annuitant goes to the board in that situation? A whistleblowing claim under prohibited practices goes to the board. I'm talking about discrimination. If there's a discrimination claim that I was let go from my position as a re-employed annuitant because of my race, would that go through the board, or would you have to bring it to Title VII? I think there's also under the prohibited practices statute, there's the Title VII right to go under that road. But I think there's also a road to go to the Office of Special Counsel and then bring an individual right of action to the board. But in this case, the public policy exception applies just as well, because Congress stated when enacting Section 8151 – excuse me – in 19 – only in 1974, that their goal was to restore injured employees to the rights – with the rights that they would have had. Re-employed annuitants have numerous rights, including some that are based on the term of length of service. For example, after they've been re-employed annuitants for a year, they get a supplemental annuity. After they've been re-employed annuitants for five years, they get a recalculation of their annuity altogether. They have a right to accumulate sick leave and vacation, which – that gets cashed out upon termination. And they also have what the OPM calls the right to be in a tenure group, which is – which determines the order in which they would be let go if there's a reduction in force. So based on whether they're permanent, conditional, or term re-employed annuitants, they would be in one of these tenure groups. And these are all rights that should be restored to re-employed annuitants, and that the purpose of Section 8151 can't be effectuated unless he's restored with all of those rights. But isn't a restoration right really the ability to be placed in the same position you were in? So it's whatever rights that the re-employed annuitant would have if he's restored to the position of a tax-dependent. But they are limited in certain respects. Yes, Your Honor. And here we don't argue that he would be re-employed as a re-employed annuitant, and therefore still be an outlaw employee. So while the agency says – excuse me – they could then terminate him for some other reason, like they just – I don't know, didn't like him or something. But they certainly couldn't do so for one of the privileged reasons, and here it would be due to his injury. For example, they couldn't put him back into a job and then just not believe that he's really recovered and terminate him for that reason. Due to his compensable injury. Due to his compensable injury. Due to his new injury. Right. And because the statute seems to clearly at least imply the section – seems to say that Section 8151 grants re-employed annuitants the right to restoration, any remand can maybe flesh out some of the factual issues as to what admits jurisdiction, but at least with respect to the board's conclusion that re-employed annuitants aren't protected under 8151, the court should reverse. Would this put the board in the – I want to ask, would this put the board in the awkward position of deciding all these Title VII discrimination claims that occur to the extent that there are many re-employed annuitants when they don't otherwise actually have jurisdiction over them? Because if they can just be dressed up as restoration claims, then it seems we've created another avenue for appeal of – there could be lots of potential discrimination or other types of claims where they wouldn't normally end up in the court. Your Honor, the – any type of discrimination or these other claims would go under statute. Section 8151 only applies to restoration rights, and any discrimination and other types of prohibitive practices are not at issue when – Well, it would say I denied my restoration rights because I was injured or – Well, I guess that's the only one that would call it a restoration. Okay, so the board would decide the injury ones, and everything else would go to PEOC, or – And is the – as Acting Special Counsel and Bravo, those two board cases held, that whistleblowing cases also have the – the individual right of action can be brought directly to the board. Thank you. Thank you. The case is submitted.